**Daniel Berke** (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BILLY FIELDS**, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **P. C. RICHARD & SON LONG ISLAND CORPORATION, 35-18 STEINWAY STREET, LLC, KING KULLEN GROCERY CO., INC.** | **CASE NO.: 24-cv-5044** |
| | **JURY DEMANDED** |
| Defendants. | |

## CIVIL COMPLAINT

BILLY FIELDS (the "Plaintiff"), as and for his complaint against P. C. RICHARD & SON LONG ISLAND CORPORATION, 35-18 STEINWAY STREET, LLC, and KING KULLEN GROCERY CO., INC. (the "Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7. Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is both located in, and does business within, this judicial district.

## PARTIES

8. Plaintiff is, and at all times material to this litigation has been, a resident of New York County, New York.

9. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. Plaintiff's complaint stems from the discrimination he has experienced in the parking lot of the store P.C. Richard & Son, where he had difficulties maneuvering his motorized mobility scooter on the steep access aisle and accessible space.

11. Plaintiff's complaint stems from the discrimination he has experienced in the parking lot of the store P.C. Richard & Son, where he had difficulties maneuvering his motorized mobility scooter on the narrow access aisle and accessible space.

12. All references to P.C. Richard & Son in this complaint are made regarding the electronics store P.C. Richard & Son and the building in which it is located, 35-18 Steinway Street, Long Island City, NY 11101.

13. All references to the parking lot (the "Parking Lot") in this complaint are made regarding the parking lot adjacent to P.C. Richard & Son, 35-18 Steinway Street, Long Island City, NY 11101.

14. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that Defendant 35-18 STEINWAY STREET, LLC is the owner of real property identified on NYC Tax Map of Queens County as Block 668, Lot 5 (the "Commercial Lot"), located at 35-18 Steinway Street, Long Island City, NY 11101.

15. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that in 2018 Defendant KING KULLEN GROCERY CO., INC. sold the Commercial Lot to Defendant 35-18 STEINWAY STREET, LLC.

16. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that in 2019 Defendant KING KULLEN GROCERY CO., INC. sold the Commercial Lot to Defendant 35-18 STEINWAY STREET, LLC.

17. Both P.C. Richard & Son and the Parking Lot are located on the Commercial Lot.

18. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION leases the building, in which the store P.C. Richard & Son is located, from the building's owner, Defendant 35-18 STEINWAY STREET, LLC.

19. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION has control over P.C. Richard & Son.

20. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION manages P.C. Richard & Son.

21. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION maintains P.C. Richard & Son.

22. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION designed P.C. Richard & Son.

23. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION built P.C. Richard & Son.

24. Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION constructed P.C. Richard & Son.

25. Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION erected P.C. Richard & Son.

26. Defendant KING KULLEN GROCERY CO., INC. altered the building located at 35-18 Steinway Street, Long Island City, NY 11101 after January 26, 1992.

27. After January 26, 1992, Defendant KING KULLEN GROCERY CO., INC. altered the building located at 35-18 Steinway Street, Long Island City, NY 11101 by altering an area serving a primary function.

28. Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot after March 14, 2012, by altering an area serving a primary function.

29. Defendant KING KULLEN GROCERY CO., INC. altered the Parking Lot after January 26, 1992.

30. Defendant KING KULLEN GROCERY CO., INC. altered the Parking Lot after March 15, 2012.

31. Defendant KING KULLEN GROCERY CO., INC. is liable for the ADA violations on the Commercial Lot, because they were created by it during alterations made to the Parking Lot after January 26, 1992.

32. Defendant KING KULLEN GROCERY CO., INC. is liable for the ADA violations on the Commercial Lot, because they were created by it during alterations made to the Parking Lot after March 14, 2012.

33. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION made alterations to PC Richard & Son in 1996.

34. In 1995, Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION made alterations to an area of PC Richard & Son that serves a primary function.

35. In 1996, Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION made alterations to an area of PC Richard & Son that serves a primary function.

36. In 1997 Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION made alterations to an area of PC Richard & Son that serves a primary function.

37. Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION altered P.C. Richard & Son.

38. After March 14, 2012, Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION altered an area of P.C. Richard & Son that contains a primary function.

39. Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION operates P.C. Richard & Son.

40. Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION at all relevant times operated P.C. Richard & Son.

41. Defendant 35-18 STEINWAY STREET, LLC owns the Commercial Lot.

42. Defendant 35-18 STEINWAY STREET, LLC has control over the Parking Lot.

43. Defendant 35-18 STEINWAY STREET, LLC manages the Parking Lot.

44. Defendant 35-18 STEINWAY STREET, LLC maintains the Parking Lot.

45. Defendant 35-18 STEINWAY STREET, LLC designed the Parking Lot.

46. Defendant 35-18 STEINWAY STREET, LLC altered the Parking Lot.

47. Defendant 35-18 STEINWAY STREET, LLC altered the Parking Lot after March 14, 2012.

48. Defendant 35-18 STEINWAY STREET, LLC is liable for ADA violations that exist on the Commercial Lot as a result of the alterations made to the Parking Lot after January 26, 1992.

49. Defendant 35-18 STEINWAY STREET, LLC is liable for the ADA violations it created on the Parking Lot while altering it after March 14, 2012.

50. Defendant 35-18 STEINWAY STREET, LLC operates the Parking Lot.

51. At all relevant times, Defendant 35-18 STEINWAY STREET, LLC operated the Parking Lot.

52. P.C. Richard & Son is in a building erected on the Commercial Lot.

53. P.C. Richard & Son is in a building constructed on the Commercial Lot.

54. P.C. Richard & Son is in a building built on the Commercial Lot.

55. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION has control over the Parking Lot.

56. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION manages the Parking Lot.

57. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION maintains the Parking Lot.

58. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION designed the Parking Lot.

59. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION built the Parking Lot.

60. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION altered the Parking Lot after January 26, 1992.

61. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION altered the Parking Lot after March 14, 2012.

62. In the alternative, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION operates the Parking Lot.

63. In the alternative, at all relevant times, Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION operated the Parking Lot.

64. The Parking Lot is for use by customers of P.C. Richard & Son exclusively.

65. Only customers of P.C. Richard & Son are allowed to park in the Parking Lot.

66. Customers of P.C. Richard & Son are allowed to park in the Parking Lot while they are shopping in P.C. Richard & Son.

67. The Parking Lot exists for the convenience of the customers of P.C. Richard & Son.

68. Customers of P.C. Richard & Son park their vehicles in the Parking Lot.

69. Defendant 35-18 STEINWAY STREET, LLC owns the Commercial Lot.

70. P.C. Richard & Son was built in 1996.

71. P.C. Richard & Son was constructed in 1996.

72. P.C. Richard & Son was erected in 1996.

73. In November 1995, Defendant KING KULLEN GROCERY CO., INC. filed job application # 400593158 with the New York City Department of Buildings to construct a new storefront facing the parking area, rearrange the exterior opening of the building, and install new full height partitions and toilets for the building located on the Commercial Lot.

74. In 1995, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by altering an area serving a primary function.

75. In 1996, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by altering an area serving a primary function.

76. In 1997, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by altering an area serving a primary function.

77. In 1995, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by constructing a new storefront facing the parking area, rearranging the exterior opening of the building, and installing new full height partitions and toilets.

78. In 1996, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by constructing a new storefront facing the parking area, rearranging the exterior opening of the building, and installing new full height partitions and toilets.

79. In 1997, Defendant KING KULLEN GROCERY CO., INC. altered the building located on the Commercial Lot by constructing a new storefront facing the parking area, rearranging the exterior opening of the building, and installing new full height partitions and toilets.

80. Defendant KING KULLEN GROCERY CO., INC. made alterations to the building on the Commercial Lot after January 26, 1992, and is liable for the ADA violations on the Commercial Lot.

81. Defendant KING KULLEN GROCERY CO., INC. made alterations to the building on the Commercial Lot after January 26, 1992, and is liable for the ADA violations on the Parking Lot.

82. Defendant KING KULLEN GROCERY CO., INC. made alterations to the building on the Commercial Lot after March 15, 2012, and is liable for the ADA violations on the Commercial Lot.

83. Defendant KING KULLEN GROCERY CO., INC. made alterations to the building located on the Commercial Lot after March 15, 2012, and is liable for the ADA violations on the Parking Lot.

84. In March 2010, P. C. RICHARD & SON LONG ISLAND CORPORATION filed an application with the NYC Department of Buildings to perform Alteration Type 1 general construction work in P.C. Richard & Son for a total job in the amount of $59,150, which approved it in June 2010.

85. In March 2010, P. C. RICHARD & SON LONG ISLAND CORPORATION altered an area of P.C. Richard & Son that contains a primary function.

86. Alterations were made to P.C. Richard & Son in 2010.

87. Modifications were made to P.C. Richard & Son in 2010.

88. Alterations were made to the Parking Lot in 2010.

89. Modifications were made to the Parking Lot in 2010.

90. Alterations were made inside P.C. Richard & Son in 2010.

91. Construction work was performed inside P.C. Richard & Son in 2010.

92. Construction work was performed in the Parking Lot in 2010.

93. P.C. Richard & Son was altered in 2010.

94. The Parking Lot was altered in 2010.

95. In November 2014, P. C. RICHARD & SON LONG ISLAND CORPORATION filed an application with the NYC Department of Buildings to perform Alteration Type 2 general construction work in P.C. Richard & Son, which was completed in 2015 and consisted of alterations to an area that contains a primary function.

96. In 2015, Alteration Type 2 general construction work was performed in P.C. Richard & Son in an area that contains a primary function.

97. In 2015, general construction work in P.C. Richard & Son included removal and installation of full height partitions at a cost of $35,000.

98. In 2015, Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION altered an area of P.C. Richard & Son that serves a primary function.

99. In 2015, Defendant KING KULLEN GROCERY CO., INC. altered an area of P.C. Richard & Son that serves a primary function.

100.    The Parking Lot was altered after January 26, 1992.

101.    P. C. RICHARD & SON LONG ISLAND CORPORATION operates the store P.C. Richard & Son in the building owned by Defendant 35-18 STEINWAY STREET, LLC.

102.    Defendant 35-18 STEINWAY STREET, LLC leases its Commercial Lot to Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION.

103.    Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION leases the Commercial Lot from Defendant 35-18 STEINWAY STREET, LLC.

104.    P.C. Richard & Son and the Parking Lot are the subject of this lawsuit and are hereinafter referred to both by their name and as the "Subject Facility".

105.     P.C. RICHARD & SON LONG ISLAND CORPORATION is an American for-profit corporation organized under the laws of New York State.

106.     P.C. RICHARD & SON LONG ISLAND CORPORATION is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

107.     NYS DOS maintains entity information for P.C. RICHARD & SON LONG ISLAND CORPORATION in its Corporation and Business Entity Database ("CBED").

108.     NYS DOS CBED maintains a corporate record for P.C. RICHARD & SON LONG ISLAND CORPORATION.

109.     NYS DOS CBED's corporate record for P. C. RICHARD & SON LONG ISLAND CORPORATION states that its chief executive officer's name and address are the following: Gregg Richard, 150 Price Parkway, Farmingdale, NY 11735.

110.     NYS DOS CBED's corporate record for P. C. RICHARD & SON LONG ISLAND CORPORATION states that its principal executive office address is 150 Price Pkwy, Farmingdale, NY 11735.

111.     NYS DOS CBED's corporate record for P. C. RICHARD & SON LONG ISLAND CORPORATION contains no information regarding its registered agent.

112.     P.C. RICHARD & SON LONG ISLAND CORPORATION does not have a registered agent.

113.     The name and address of P.C. RICHARD & SON LONG ISLAND CORPORATION's registered agent are not known to Plaintiff.

114.     NYS DOS CBED's corporate record for P.C. RICHARD & SON LONG ISLAND CORPORATION does not state the entity's primary location name and address.

115.   NYS DOS CBED record for P.C. RICHARD & SON LONG ISLAND CORPORATION states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is P.C. Richard & Son Long Island Corporation, 150 Price Parkway, Farmingdale, NY 11735.

116.   The Office of the City Register of New York City Department of Finance maintains a deed record showing that the commercial lot on which P. C. Richard & Son and the adjacent parking lot are located are owned by Defendant 35-18 STEINWAY STREET, LLC.

117.   Defendant 35-18 STEINWAY STREET, LLC at all relevant times was, and currently is, the owner of the commercial lot in Queens County on which the Subject Facility is located.

118.   Defendant 35-18 STEINWAY STREET, LLC is an American for-profit limited liability company organized under the laws of New York State.

119.   Defendant 35-18 STEINWAY STREET, LLC is licensed to conduct business in the State of New York by the NYS DOS.

120.   NYS DOS maintains entity information for 35-18 STEINWAY STREET, LLC in its CBED.

121.   NYS DOS CBED maintains a corporate record for Defendant 35-18 STEINWAY STREET, LLC.

122.   The corporate record for Defendant 35-18 STEINWAY STREET, LLC does not state its chief executive officer's name and address.

123.    The corporate record for Defendant 35-18 STEINWAY STREET, LLC does not state its principal executive office address.

124.    The corporate record for Defendant 35-18 STEINWAY STREET, LLC does not state its registered agent's name and address.

125.    The corporate record for Defendant 35-18 STEINWAY STREET, LLC does not state the entity's primary location name and address.

126.    Defendant 35-18 STEINWAY STREET, LLC does not have a registered agent.

127.    The name and address of 35-18 STEINWAY STREET, LLC's registered agent are not known to Plaintiff.

128.    The corporate record for Defendant 35-18 STEINWAY STREET, LLC states that the post office address, to which the Secretary of State shall mail a copy of any process against the entity served upon the Secretary of State by personal delivery is the following: c/o King Cullen Grocery Co., Inc., Attn Bernard P. Kennedy, Esq, 185 Central Avenue, Bethpage, NY 11714.

129.    The Office of the City Register of New York City Department of Finance maintains a deed record showing that Defendant 35-18 STEINWAY STREET, LLC is located at 185 Central Avenue, Bethpage, NY 11714.

130.    Under the lease between Defendant 35-18 STEINWAY STREET, LLC and Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION, the latter is responsible for ensuring that the Parking Lot complies with the law, including the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

131.     Defendant 35-18 STEINWAY STREET, LLC, as owner of the Commercial Lot, which houses the store and public accommodation of P.C. Richard & Son, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

132.     Defendant KING KULLEN GROCERY CO., INC. is an American for-profit corporation organized under the laws of New York State.

133.     Defendant KING KULLEN GROCERY CO., INC. is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

134.     NYS DOS maintains entity information for Defendant KING KULLEN GROCERY CO., INC. in its CBED.

135.     NYS DOS CBED maintains a corporate record for Defendant KING KULLEN GROCERY CO., INC.

136.     NYS DOS CBED's corporate record for Defendant KING KULLEN GROCERY CO., INC. states that its chief executive officer's name and address are the following: Joseph W. Brown, 102 Motor Parkway, Suite 410, Hauppauge, NY 11788.

137.     NYS DOS CBED's corporate record for Defendant KING KULLEN GROCERY CO., INC. states that its principal executive office address is 102 Motor Parkway, Suite 410, Hauppauge, NY 11788.

138.     NYS DOS CBED's corporate record for Defendant KING KULLEN GROCERY CO., INC. does not state any information regarding its registered agent.

139.     NYS DOS CBED record for KING KULLEN GROCERY CO. INC. states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on

the Secretary of State as agent, is Joseph W. Brown, 102 Motor Parkway, Suite 410, Hauppauge, NY 11788.

140.     Defendants are jointly and severally liable for the operation of the Parking Lot.

141.     Defendants are jointly and severally liable for the design of the Parking Lot.

142.     Defendants are jointly and severally liable for the construction of the Parking Lot.

143.     Defendants are jointly and severally liable for the maintenance of the Parking Lot.

144.     Defendants are jointly and severally liable for the management of the Parking Lot.

145.     Defendants are jointly and severally liable for the control of the Parking Lot.

146.     Defendants are jointly and severally liable for alterations to the Parking Lot.

147.     Defendants are jointly and severally liable for violations of Title III of the ADA.

148.     Defendant 35-18 STEINWAY STREET, LLC and Defendant P. C. RICHARD & SON LONG ISLAND CORPORATION are jointly and severally liable for the operation of the Parking Lot.

149.     After January 26, 1992, either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

150.     P.C. Richard & Son is a store and a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

151.     On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

152.     That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he has received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

153.     On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

154.     Congress made the following findings:

   a.   Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   b.   Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

   c.   Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation,

communication, recreation, institutionalization, health services, voting and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

155.     Furthermore, Congress also explicitly stated that the ADA had to:

  a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

  b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

  c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

156.     Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

157.     Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or

fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

158.     The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

159.     ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

160.     It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

161.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

162.     The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

163.     The Subject Facility affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5).

164.     Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

165.     Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State, and New York City Human Rights laws.

166.     One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

> 28 C.F.R. §36.304

167.     Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability, 28 C.F.R. §36.304.

168.     Removal of the architectural barriers is readily achievable by Defendants.

169.     At all relevant times herein, Defendants failed to remove architectural barriers to entry for disabled individuals present in both the Parking Lot and in the path of travel to P.C. Richard & Son, even though it is readily achievable to remove such barriers.

170.       Defendant KING KULLEN GROCERY CO, INC. designed the Parking Lot.

171.       Defendant KING KULLEN GROCERY CO, INC. constructed the Parking Lot.

172.       Defendant KING KULLEN GROCERY CO. INC. altered the Parking Lot after January 26, 1992.

173.       Defendant KING KULLEN GROCERY CO. INC. altered the Parking Lot after March 14, 2012.

174.       Defendant 35-18 STEINWAY STREET, LLC approved alterations to the Parking Lot after January 26, 1992.

175.       Defendant 35-18 STEINWAY STREET, LLC approved alterations to the Parking Lot after March 14, 2012.

176.       Defendant 35-18 STEINWAY STREET, LLC purchased the Commercial Lot in 2018.

177.       Defendant 35-18 STEINWAY STREET, LLC purchased the Commercial Lot in 2019.

178.       Defendant 35-18 STEINWAY STREET, LLC purchased the Commercial Lot in 2018 and thereby assumed liability for the ADA violations on the path of travel from the Parking Lot to P. C. Richard & Son.

179.       Defendant 35-18 STEINWAY STREET, LLC purchased the Commercial Lot in 2018 and thereby assumed liability for the ADA violations in the Parking Lot.

180.       Defendant 35-18 STEINWAY STREET, LLC purchased the Commercial Lot in 2019 and thereby assumed liability for the ADA violations, which were the result of the alterations that were made to the Parking Lot after March 14, 2012.

181.     Defendant 35-18 STEINWAY STREET, LLC approved alterations to the Parking Lot when it purchased the Commercial Lot.

182.     Defendant KING KULLEN GROCERY CO., INC. agreed to assume liability for any ADA violations on the Commercial Lot after it sold it to Defendant 35-18 STEINWAY STREET, LLC.

183.     Defendants altered the Parking Lot after January 26, 1992.

184.     Defendants repaired the Parking Lot after January 26, 1992.

185.     Defendants repaved the Parking Lot after January 26, 1992.

186.     Defendants altered the Parking Lot after March 14, 2012.

187.     Defendants repaired the Parking Lot after March 14, 2012.

188.     Defendants repaved the Parking Lot after March 14, 2012.

189.     P.C. Richard & Son begun operations in 1996.

190.     Defendants altered P.C. Richard & Son after 1996.

191.     Defendants modified P.C. Richard & Son after 1996.

192.     Defendants remodeled P.C. Richard & Son since 1996.

193.     Since 1996 Defendants renovated P.C. Richard & Son.

194.     Defendants renovated P.C. Richard & Son in 2010, as well as in the subsequent years.

195.     Defendants repaired P.C. Richard & Son after March 14, 2012.

196.     Defendants modified P.C. Richard & Son after March 14, 2012.

197.     Defendants altered P.C. Richard & Son in 2010, as well as in subsequent years by making alterations to an area that serves a primary function.

198.     Defendants altered P.C. Richard & Son after March 14, 2012, by making alterations to an area that serves a primary function.

199.     Defendants added new interior full height partitions to P.C. Richard & Son in May 2015.

200.     In 2015, Defendants added new interior full height partitions to P.C. Richard & Son.

201.     In May 2015, Defendants removed some of the full height interior partitions inside P.C. Richard & Son.

202.     In 2015, Defendants removed some of the full height interior partitions inside P.C. Richard & Son.

203.     Defendants' addition of some and removal of other full height partitions inside of P.C. Richard & Son in 2015 affected useability by disabled individuals of an area of the store that serves a primary function.

204.     Defendants' addition of some and removal of other full height partitions inside of P.C. Richard & Son in May 2015 affected access to an area of the store by disabled individuals that serves a primary function.

205.     Addition or removal of full height partitions inside of P.C. Richard & Son in May 2015 affected the usability of a sales area and/or customer service area of P.C. Richard & Son by disabled individuals.

206.     Addition or removal of full height partitions inside of P.C. Richard & Son in 2015 affected the usability of a sales area and/or customer service area of P.C. Richard & Son by disabled individuals.

207.     Addition or removal of full height partitions inside of P.C. Richard & Son in May 2015 was an alteration of the store in an area that serves a primary function.

208.     Addition or removal of full height partitions inside of P.C. Richard & Son in 2015 was an alteration of the store in an area that serves a primary function.

209.     "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])


210.     "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible, the path of travel* to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are

> *not disproportionate to the overall alterations* in terms of cost and scope (as determined under criteria established by the Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."
>
> Id.

211.     "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

212.     ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

213.     "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

214.     Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION made alterations to P.C. Richard & Son in 2015 in areas that affect the useability of and/or primary function of the store but failed to make the path of travel to P.C. Richard & Son readily accessible to the maximum extent feasible for persons with disabilities.

215.     Defendant KING KULLEN GROCERY CO., INC. made alterations in the Parking Lot after March 14, 2012, but failed to make it compliant with 2010 ADA Standards.

216.     Defendant 35-18 STEINWAY STREET, LLC made alterations in the Parking Lot after March 14, 2012, but failed to make it compliant with 2010 ADA Standards.

217.     After March 14, 2012, Defendants failed to remediate the ADA violations in the Parking Lot, even though these remediations were readily achievable.

218.      After March 14, 2012, Defendants failed to remediate the ADA violations in the

Parking Lot.

219.      After March 14, 2012, Defendants failed to make the Parking Lot readily accessible

to the maximum extent feasible for individuals with disabilities.

220.      Defendants failed to make the Parking Lot readily accessible to the maximum

extent feasible for individuals with disabilities.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

221.      Plaintiff has been diagnosed by a physician as having suffered an ischemia. He has

suffered right-sided hemiparesis, which caused nerve damage, made it difficult for him to

stand, balance his body weight, and walk.

222.      Plaintiff's physician prescribed him a motorized mobility scooter.

223.      Plaintiff has obtained the motorized mobility scooter and uses it every day for all

activities requiring mobility.

224.      Routes connecting accessible spaces and all features, goods and services of a

facility must be level, properly sloped, sufficiently wide and without cracks, holes or

other hazards that can pose danger of tipping, catching wheels, or falling.

225.      Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or
>
> mental impairment that substantially limits one or more of
>
> the major life activities of such individual…. The phrase
>
> *major life activities* means functions such as caring for one's

self, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning and working.

28 C.F.R. §36.104 (italics in original).

226.     Plaintiff has a disability that affects his ability to walk and must use his motorized

mobility scooter to enter and exit an accessible van.

227.     Plaintiff lives on Manhattan's Upper West Side.

228.     Plaintiff has lived on Manhattan's Upper West Side for approximately seven years.

229.     Plaintiff visits Queens at least once per month to attend meetings at the NYC

Department of Health.

230.     Plaintiff visits Queens at least once per month to attend meetings at NYC

Department of Human Resources Administration.

231.     Plaintiff visits Queens, dines, and shops in Long Island City and Astoria

approximately once per two months when he visits his friend, who lives on the border of

these neighborhoods and plans to continue to visit them in the future.

232.     Plaintiff dines and shops in Long Island City and Astoria approximately two to

three times per month when he attends meetings at the NYC Department of Health and

NYC Department of Human Resources Administration and plans to continue to do so in

the future.

233.     Plaintiff visits the Museum of the Moving Image in Long Island City/Astoria

approximately once every three months.

234.     P.C. Richard & Son is in Long Island City/Astoria, Queens.

235.     Plaintiff lives within 5.5 miles from P.C. Richard & Son.

236.     Plaintiff lives within 35 minutes from P.C. Richard & Son when he travels to it from his home in an accessible van.

237.     Plaintiff uses his mobility scooter and travels, shops in stores and goes to restaurants in Manhattan.

238.     Plaintiff uses his mobility scooter, travels, shops in stores, and goes to restaurants in Queens neighborhoods, including Astoria, Long Island City, Sunnyside, and Woodside.

239.     Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods throughout the five boroughs of New York City.

240.     Plaintiff visits these neighborhoods in an accessible van.

241.     Plaintiff visits these neighborhoods by subway.

242.     Plaintiff has been visiting Queens for over three years.

243.     Plaintiff shops in Queens.

244.     Plaintiff dines in various Queens neighborhoods.

245.     Plaintiff has been shopping in Queens in 2022.

246.     Plaintiff has been shopping in Queens in 2023.

247.     Plaintiff has been shopping in Queens in 2024.

248.     Plaintiff intends to continue shopping in Long Island City and Astoria in the future.

249.     Plaintiff enjoys visiting the Museum of the Moving Image, 36-01 35th Avenue, Long Island City, NY 11106.

250.     Plaintiff visited the Museum of the Moving Image in 2023.

251.     Plaintiff visited the Museum of the Moving Image in 2024.

252.     The Museum of the Moving Image is located two city blocks from P.C. Richard & Son.

253.    In June 2024, Plaintiff arranged for a trip in an accessible van and visited P.C Richard & Son.

254.    In June 2024, Plaintiff travelled in an accessible van to P.C. Richard & Son.

255.    In June 2024, the driver of the accessible van dropped off Plaintiff in an accessible space, (hereinafter defined as Accessible Space #3) of the Parking Lot.

256.    In June 2024, Plaintiff had difficulties controlling his motorized scooter on a steep slope of the access aisle in the Parking Lot.

257.    In June 2024, Plaintiff had difficulties exiting and entering the accessible van while he was in his motorized scooter, because the access aisle in the Parking Lot was narrow.

258.    In June 2024, Plaintiff had difficulties maneuvering his motorized scooter within the access aisles of the Parking Lot.

259.    In June 2024, Plaintiff had difficulties maneuvering his motorized scooter within the accessible spaces of the Parking Lot.

260.    In June 2024, Plaintiff became frustrated, disappointed, and humiliated because he encountered difficulties maneuvering his motorized scooter within the accessible spaces and access aisles of the Parking Lot.

261.    The Parking Lot was operated by one or more of Defendants, who did not have Plaintiff and his needs in mind and did not accommodate him and facilitate his access to the Subject Facility in June 2024.

262.    Defendant KING KULLEN GROCERY CO., INC. discriminated against Plaintiff by constructing a Parking Lot that denied him a safe path of travel from the Parking Lot to P.C. Richard & Son.

263.     Defendant 35-18 STEINWAY STREET, LLC discriminated against Plaintiff by denying him a safe path of travel from the Parking Lot to P.C. Richard & Son in June 2024.

264.     Defendant P.C. RICHARD & SON LONG ISLAND CORPORATION discriminated against Plaintiff by denying him a safe path of travel from the Parking Lot to P.C. Richard & Son in June 2024.

265.     The Parking Lot was operated by one or more Defendants, which disregarded the accessibility requirements of Title III of the ADA and failed to accommodate Plaintiff and facilitate his access to P.C. Richard & Son.

**Plaintiff Intends to Return to P.C. Richard & Son**

266.     P.C. Richard & Son is in Long Island City/Astoria, Queens, NY.

267.     Plaintiff meets with his friend in and near Long Island City.

268.     Plaintiff meets with his friend in and near Astoria.

269.     Plaintiff's friend lives near the border of Long Island City and Astoria.

270.     P.C. Richard & Son is within 5.5 miles from Plaintiff's home on the Upper West side in Manhattan.

271.     Plaintiff visits Long Island City/ Astoria, Queens, NY about two to three times per month and plans to continue to visit these neighborhoods in the future.

272.     Plaintiff visits Long Island City/Astoria approximately two times per month to attend meetings of NYC Department of Health and intends to continue to do so in the future.

273.     Plaintiff visits Long Island City/Astoria to attend meetings of NYC Department of Human Resources Administration approximately two times per month and intends to continue to do so in the future.

274.     Plaintiff visits Long Island City/Astoria about once every two months to meet and socialize with his friend, as well as to dine and shop in that area, and intends to continue to do so in the future.

275.     P.C. Richard & Son is conveniently located for Plaintiff when he visits his friend, who lives near Long Island City/Astoria.

276.     Plaintiff intends to visit P.C. Richard & Son again in the future when he visits Long Island City to purchase items offered for sale in it and enjoy its services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

277.     Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting his civil rights.

278.     Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

279.     Completely independent of the personal desire to have access to P.C. Richard & Son free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

280.     As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

281.     Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

282.     When Plaintiff determines that barriers to access are unlawful, he initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

283.     Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

284.     As a tester, Plaintiff visited Defendants' P.C. Richard & Son to encounter architectural barriers to access.

285.     As a tester, Plaintiff personally encountered the architectural barriers in the Parking Lot.

286.     Plaintiff visited P.C. Richard & Son, purchased KitchenAid coffee grinder in it, obtained a receipt and encountered ADA violations in the Parking Lot.

287.     Plaintiff encountered the ADA violations during his visit to P.C. Richard & Son.

288.     Plaintiff encountered the ADA violations in the Parking Lot.

289.     Following conclusion of this lawsuit, Plaintiff intends to return to P.C. Richard & Son as both a customer, who wants to shop at it, and as a tester to determine whether Defendants remediated their ADA violations.

290.     Plaintiff's motivation to return to P.C. Richard & Son in part stems from his desire to utilize ADA litigation to make his community more accessible for Plaintiff and other disabled individuals, who cannot visit Defendants' P.C. Richard & Son because of the architectural barriers in its Parking Lot.

291.     Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to P.C. Richard & Son as soon as

it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering

them to remediate the ADA violations in the Parking Lot.

292.     Following conclusion of this lawsuit, Plaintiff intends to visit P.C. Richard & Son

at least twice a year to ensure that Defendants comply with the ADA and to purchase goods

in that store.

293.     Plaintiff is confident that Defendants will not remediate the ADA violations in P.C.

Richard & Son without the Court's intervention.

294.     Plaintiff will continue to suffer discrimination without the Court's intervention.

295.     Plaintiff will enforce the injunction once it is issued by the Court.


### Violations of Title III in P.C. Richard & Son

296.     Plaintiff has experienced difficulties gaining access to P.C. Richard & Son, because

of the unlawful architectural barriers, and therefore has suffered an injury in fact.

297.     Since January 26, 1992, Defendants have engaged in unlawful practices in violation

of the ADA, the New York State Civil laws, and the New York State and City Human

Rights laws.

298.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation

of the ADA, the New York State Civil laws, and the New York State and City Human

Rights laws.

299.     Since at least June 2024, through the present time, Defendants continue to engage

in unlawful practices in violation of the ADA, the New York State Civil laws, and the New

York State and City Human Rights laws.

300.     Due to architectural barriers which remain in the Parking Lot in violation of the ADA, Plaintiff has difficulties visiting P.C. Richard & Son and is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

301.     The barriers to access P.C. Richard & Son have made it difficult for Plaintiff to visit it and have caused him embarrassment, humiliation, and frustration.

302.     Because the Subject Facility is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

303.     The architectural barriers to access to P.C. Richard & Son have greatly inconvenienced Plaintiff.

304.     P.C. Richard & Son violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

305.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published (1991 Standards).

306.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial

facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

307.     Defendants are discriminating against Plaintiff, because at their Subject Facility they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of the building by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

308.     The Parking Lot was constructed to be used exclusively by customers of P.C. Richard & Son.

309.     There are several rows of parking spaces in the Parking Lot.

310.     In this Complaint, all references to "left" and "right" are from the point of view of a person standing in the Parking Lot, in between the accessible spaces, facing the entrance of P.C. Richard & Son.

311.     There are two double rows of parking spaces in the Parking Lot, in which cars are parked facing each other and in which accessible spaces and access aisles are located.

312.     In this Complaint, the two double rows in the Parking Lot are referred to as Row 1 and Row 2. Row 1 is located to the left and Row 2 is located to the right.

313.     There are four accessible spaces and four access aisles in the Parking Lot.

314.     In this Complaint, the accessible parking space and access aisle on the left side of Row 1 are referred to as Accessible Space #1 and Access Aisle #1.

315.     In this Complaint, the accessible parking space and access aisle on the right side of Row 1 are referred to as Accessible Space #2 and Access Aisle #2.

316.     In this Complaint, the accessible parking space and access aisle on the left side of Row 2 are referred to as Accessible Space #3 and Access Aisle #3.

317.     In this Complaint, the accessible parking space and access aisle on the right side of Row 2 are referred to as Accessible Space #4 and Access Aisle #4.

318.     "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

319.     The identification sign identifying Accessible Space #1 in the Parking Lot is located at the height of 51 inches above the ground surface, measured to the bottom of the sign, in violation of 2010 Standards §502.6.

320.     The identification sign identifying Accessible Space #2 in the Parking Lot is located at the height of 51 inches above the ground surface, measured to the bottom of the sign, in violation of 2010 Standards §502.6.

321.     The identification sign identifying Accessible Space #4 in the Parking Lot is located at the height of 51 inches above the ground surface, measured to the bottom of the sign, in violation of 2010 Standards §502.6.

322.     "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. **EXCEPTION:** Van parking spaces shall be permitted to be 96 inches (2440 mm) wide

minimum where the access aisle is 96 inches (2440 mm) wide minimum." 2010 Standards §502.2.

323.     "**Width.** Access aisles serving car and van parking *spaces* shall be 60 inches (1525 mm) wide minimum." 2010 Standards §502.3.1.

324.     "**Length.** Access aisles shall extend the full length of the parking *spaces* they serve." 2010 Standards §502.3.2.

325.     "**Marking.** Access aisles shall be marked so as to discourage parking in them." 2010 Standards §502.3.3.

326.     "**Location.** Access aisles shall not overlap the *vehicular way*. Access aisles shall be permitted to be placed on either side of the parking *space* except for angled van parking *spaces* which shall have access aisles located on the passenger side of the parking spaces." 2010 Standards §502.3.4.

327.     Accessible Space #1 is 96 inches wide.

328.     Access Aisle #1 is 80 inches wide.

329.     Accessible Space #2 is 96 inches wide.

330.     Access Aisle #2 is 80 inches wide.

331.     Accessible Space #3 is 96 inches wide.

332.     Access Aisle #3 is 81 inches wide.

333.     Accessible Space #4 is 96 inches wide.

334.     Access Aisle #4 is 81 inches wide.

335.     Because each of the four accessible spaces in the Parking Lot is less than 132 inches wide, as well as because each of the four accessible spaces is 96 inches wide, while the access aisles adjoining them are only 80-81 inches wide, no accessible space in the Parking

Lot is compliant with §502.2 of 2010 Standards to satisfy the minimum requirements for an accessible van parking space.

336.     There is no van-accessible space in the Parking Lot in violation of 2010 Standards §502.2.

337.     "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

338.     "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

339.     Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

340.     Defendants grossly violated §502.4 of 2010 Standards.

341.     Accessible Space #2 has a running slope of 5.4%, which is equivalent to 1:8.5, in violation of 2010 Standards §502.4.

342.     Accessible Space #2 has a cross slope of 3.9%, which is equivalent to 1:25.64, in violation of 2010 Standards §502.4.

343.     Access Aisle #2 has a running slope of 4.2%, which is equivalent to 1:23.81, in violation of 2010 Standards §502.4.

344.     Access Aisle #2 has a cross slope of 6.5%, which is equivalent to 1:15.38, in violation of 2010 Standards §502.4.

345.     Accessible Space #3 has a running slope of 4.6%, which is equivalent to 1:21.74, in violation of 2010 Standards §502.4.

346.     Accessible Space #3 has a cross slope of 4.8%, which is equivalent to 1:20.83, in violation of 2010 Standards §502.4.

347.     Access Aisle #3 has a running slope of 4.1%, which is equivalent to 1:24.39, in violation of 2010 Standards §502.4.

348.     Accessible Space #4 has a cross slope of 5.9%, which is equivalent to 1:16.95, in violation of 2010 Standards §502.4.

349.     Plaintiff intends to visit P.C. Richard & Son again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, meticulously detailed in this Complaint, are removed. The purpose of that return visit would be to be a regular customer, who comes to enjoy goods and services offered at P.C. Richard & Son, as well as to determine whether, and when, P.C. Richard & Son has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy P.C. Richard & Son in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

350.     Plaintiff intends to visit P.C. Richard & Son again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject himself to Defendants' unequal treatment and blatant discrimination of him through their architectural barriers to equal

access and engage in the futile gesture of attempting to patronize P.C. Richard & Son, a business place of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at P.C. Richard & Son.

351.     Plaintiff has traveled to P.C. Richard & Son as a customer, as well as an independent advocate for the disabled, encountered and/or observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at P.C. Richard & Son until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make P.C. Richard & Son equally accessible to all.

352.     Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of P.C. Richard & Son and the Parking Lot to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

353.     The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and barriers to equal access to P.C. Richard & Son, because Plaintiff was unable to access and assess all areas of P.C. Richard & Son due to the architectural barriers encountered. A complete list of P.C. Richard & Son ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of

remedial measures necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

354.    Defendants have failed to maintain the accessible elements at P.C. Richard & Son and the Parking Lot. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

355.    Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at P.C. Richard & Son and the Parking Lot in violation of 28 CFR §36.202 and §36.211.

356.    The architectural barriers, described above, have a discriminative effect on Plaintiff, as a wheelchair user, making him unable to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of P.C. Richard & Son as Defendants' able-bodied customers.

357.    Defendants have failed to remove architectural barriers to accessibility to P.C. Richard & Son in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

358.    Since January 26, 1992, Defendants have altered the parking lot adjacent to P.C Richard & Son.

359.    Since March 15, 2012, Defendants have altered the parking lot adjacent to P.C. Richard & Son.

360.    **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is

readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

361.     **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with this section would be structurally impracticable, compliance with this section is required to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

362.     **"(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

363.     The Parking Lot was altered after January 26, 1992.

364.     The Parking Lot was altered after March 15, 2012.

365.     Defendants failed to make P.C. Richard & Son readily accessible to disabled individuals, including those who use wheelchairs.

366.     The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

367.     The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

368.     It is readily achievable to remediate every one of the violations described above as the costs do not exceed the benefits.

369.     Removal of the physical barriers and dangerous conditions present at P.C. Richard & Son is readily achievable because of the site conditions, the structural design of the store and the straightforward nature of the necessary modifications.

370.     To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

371.     Removal of the architectural barriers and dangerous conditions at P.C. Richard & Son and the Parking Lot is readily achievable because of the relative low cost of the necessary modifications.

372.     Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

373.     The Parking Lot design and construction is not readily accessible for individuals with disabilities in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations) (hereinafter "1991 ADA Standards").

374.     It was structurally practicable for Defendants to meet the requirements of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

375.     P.C. Richard & Son's Parking Lot was not constructed to be readily accessible for individuals with disabilities in violation of 2010 ADA Standards.

376.     It was structurally practicable for Defendants to meet the requirements of 2010 ADA Standards.

377.     The Parking Lot has not been designed in compliance with 1991 ADA Standards.

378.     The Parking Lot has not been constructed in compliance with 1991 ADA Standards.

379.     The Parking Lot has been altered after January 26, 1992, and does not comply with 1991 ADA Standards.

380.     The Parking Lot has not been maintained in compliance with 1991 ADA Standards.

381.     The Parking Lot has not been designed in compliance with 2010 ADA Standards.

382.     The Parking Lot has not been constructed in compliance with 2010 ADA Standards.

383.     The Parking Lot has been altered after March 14, 2012, and does not comply with 2010 ADA Standards.

384.     The Parking Lot has not been maintained in compliance with 2010 ADA Standards.

385.     By continuing to maintain and/or operate the Parking Lot with discriminatory conditions in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation

and segregation and deprive him of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

386.     Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

387.     After January 26, 1992, there has been an alteration to an area of P. C. Richard & Son that contains a primary function and there has been an alteration to the Parking Lot. Thereby, Defendants are required to ensure to the maximum extent feasible that such altered areas and/or paths of travel to such altered areas are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

388.     Defendants' Parking Lot was altered after January 26, 1992, as defined in 28 CFR 36.401.

389.     Defendants' Subject Facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

390.     To date, Defendants have failed to comply with the above mandates.

391.     Defendants failed to make the altered portion of the Parking Lot "readily accessible to and usable by individuals with disabilities," even though alterations to the Parking Lot were commenced after January 26, 1992, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

392.     Defendants failed to make the altered portion of the Parking Lot "readily accessible to and usable by individuals with disabilities," even though alterations to the Parking Lot were commenced after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

393.    Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

394.    Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against him.

395.    Plaintiff's requested relief serves public interest.

396.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist in the Parking Lot and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

397.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make P.C. Richard & Son readily accessible to persons with disabilities.

398.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make the Parking Lot readily accessible to persons with disabilities.

399.    Defendants should have removed architectural barriers for individuals with disabilities by January 26, 1992. To date, they have failed to comply with that mandate.

400.    Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

401.     It was not structurally impracticable for Defendants to make the Parking Lot accessible.

402.     Removal of all architectural barriers existing at the Parking Lot was, and is, readily achievable by Defendants.

403.     Accommodations to Plaintiff and removal of architectural barriers at the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

404.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

405.     Defendants' failure to make the Parking Lot accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, because of his disability.

406.     The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of P.C. Richard & Son and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

407.     The Parking Lot is not accessible to, or readily usable by, individuals with disabilities.

408.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Parking Lot, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close P.C. Richard & Son until the required modifications are completed.

409.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of P.C. Richard & Son is legally inexcusable.

410.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

411.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the 1991 ADA Standards. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

412.     By not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated him, Defendants gave a crystal-clear message to Plaintiff that his patronage is neither needed, desired, welcomed, or wanted.


**SECOND CAUSE OF ACTION**

**Violations of the New York State Human Rights Laws**

413.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

414.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any
>
> person, being the owner, lessee, proprietor, manager,

49

superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

415.   The Subject Facility is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

416.   Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

417.   Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

418.   Defendants do not provide Plaintiff with equal opportunity to use their public accommodation.

419.   Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

420.   Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

421.     Defendants' unequal treatment of Plaintiff was demonstrated when he was discriminated against.

422.     Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

423.     Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

424.     In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

425.     Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).


**THIRD CAUSE OF ACTION**

**Violations of the New York State Civil Rights Laws**

426.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

427.     Defendants have violated Plaintiff's civil rights because of his disability.

428.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

429.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

430.     A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

431.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

432.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>
>> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
>>
>>> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;
>
>> NYC Admin. Code §8-107(4)

433.     Defendants have not reasonably accommodated Plaintiff in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

434.     In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff.

435.     Reasonable accommodations and modifications are necessary to enable Plaintiff with the ability to enjoy non-restricted access and use of Defendants' Subject Facility.

436.     In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

437.     In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

438.     Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

439.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

440.     A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

441.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## **ATTORNEY'S FEES AND COSTS**

442.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

> NYC Admin. Code §8-502(g)

**COMPENSATORY AND STATUTORY MONETARY DAMAGES**

443.        Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

444.        Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be

recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. …   [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

445.     The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this Complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

**INJUNCTIVE RELIEF**

446.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law, and close the Subject Facility until requisite modifications are completed.

447.     Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

448.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in <u>Shariff v. Alsaydi</u>, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

449.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

**DECLARATORY RELIEF**

450.     Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facility by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.    Grant a permanent injunction

    i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.) Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

    iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

    iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)  Ordering Defendants to make the Subject Facility readily accessible to and usable by Plaintiff and other individuals with disabilities.

    vi.) Ordering the issuance of an injunction that requires Defendants

        i.  to prepare architectural plans remedying the ADA violations described in the Complaint, and

        ii.   to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.)     Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.)     Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B.     Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.     Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.     Enter an order requiring Defendants to alter their Subject Facility and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.     Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.     Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.    Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.    Find that Plaintiff is a prevailing party in this litigation.

I.     Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.     Award such other and further relief as it deems necessary, just, and proper.


## **JURY DEMANDED**

Plaintiff demands a trial by jury of all the issues of fact and damages.



July 21, 2024

Respectfully submitted,

<u>s:/Daniel Berke</u>
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on July 21, 2024, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

July 21, 2024

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*